**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

C.T.,

           **Plaintiff,**                              **<u>CONSOLIDATED CASES</u>**

           **v.**                                   **Case No.  06-2093-JWL**

**LIBERAL SCHOOL DISTRICT, et al.,**

           **Defendants.**

_____

G.B.,

           **Plaintiff,**

           **v.**                                 **Case No.  06-2360-JWL**

**LIBERAL SCHOOL DISTRICT, et al.,**

           **Defendants.**

_____

J.B.,

           **Plaintiff,**

           **v.**                                 **Case No.  06-2359-JWL**

**LIBERAL SCHOOL DISTRICT, et al.,**

           **Defendants.**

_____

**MEMORANDUM AND ORDER**

These consolidated cases arise from allegations that plaintiffs C.T., G.B. and J.B. were sexually abused and harassed by defendant Johnny Aubrey, who was a volunteer weight training coach for student athletes in Liberal, Kansas.  Plaintiffs assert claims against Mr.

Aubrey, who is appearing pro se in this action, for childhood sexual abuse, battery, and breach of fiduciary duty. Additionally, they assert various claims against the school district and several individuals employed by the school district (collectively, "the school district defendants") under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, constitutional claims under 42 U.S.C. § 1983, and state law claims seeking to impose vicarious liability for Mr. Aubrey's actions, negligent supervision of Mr. Aubrey, and negligent failure to supervise children.

This matter is currently before the court on the school district defendants' Motions for Summary Judgment (doc. 262 in Case No. 06-2093, doc. 10 in Case No. 06-2359, and doc. 20 in Case No. 06-2360).[1] For the reasons explained below, the school district defendants'

---

[1] Plaintiffs have filed Motions for Leave to File Surreplies (doc. 286 in Case No. 06-2093, doc. 22 in Case No. 06-2359, and doc. 32 in Case No. 06-2360). Under D. Kan. Rule 7.1(b), parties are permitted to file a dispositive motion, a response, and a reply. Surreplies typically are not permitted. *Metzger v. City of Leawood*, 144 F. Supp. 2d 1225, 1266 (D. Kan. 2001). A surreply will not be allowed unless the reply of the party filing the initial motion contained new information which the responding party needs an opportunity to address. *Lopez v. Garcia*, 1 F. Supp. 2d 1404, 1406 (D. Kan. 1997). In this case, plaintiffs' proposed surreplies are not warranted under this standard.

One of the arguments C.T. seeks to address, for example, is the school district's argument that he was not denied educational opportunities. The school district, however, raised this argument in its initial memorandum in support of its motion for summary judgment. *See* Mem. in Supp. of Mot. for S.J. (doc. 263 in Case No. 06-2093), at 41-42. Consequently, C.T. had an opportunity to respond to this motion in his memorandum in opposition to the motion. Also, he now seeks to rely on *Jennings v. University of North Carolina*, 482 F.3d 686, 699 (4th Cir. 2007), an opinion that was issued on April 9, 2007, which was more than a year before C.T. filed his memorandum in opposition to the school district's motion. Similarly, plaintiffs seek to debate the meaning of the Tenth Circuit's ruling in *Simpson v. University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007), yet the school district defendants raised their arguments concerning *Simpson* in their initial memorandum in support of their motion for summary judgment. Thus, again, plaintiffs have

motions for summary judgment are granted in part and denied in part.  Specifically, the motions are denied with respect to G.B.'s Title IX student-on-student harassment claim; all of the plaintiffs' state law respondeat superior claims; and all of the plaintiffs' state law negligent supervision, retention, and hiring claims.  The motions for summary judgment are otherwise granted with respect to all other Title IX claims; plaintiffs' § 1983 claims; plaintiffs' state law ratification claims; and plaintiffs' claims for negligent failure to supervise children.  Plaintiffs' Motion to Consolidate Cases for Trial (doc. 230 in Case No. 06-2093) is granted.

---

already had an opportunity respond to defendants' arguments concerning the meaning of *Simpson*.

Plaintiffs also suggest that a random comment made by the school district in footnotes in each of the reply briefs conceded actual knowledge of the nude weigh-ins at school and that these "concessions severely undermine the Defendants' arguments that they had no knowledge of sexual harassment occurring in their program."  The court has reviewed these footnotes, however, and does not believe that they can fairly be construed to mean that defendants have conceded this issue that they so vigorously contested in the parties' statements of facts.

The other arguments plaintiffs seek to raise in their surreplies – i.e., the extent to which the school district knew about sexual abuse by another school volunteer and arguments concerning a municipal custom – are simply immaterial to the manner in which the court has resolved the school district defendants' motions for summary judgment.  In sum, in resolving the school district defendants' motions for summary judgment, the court has not relied on any new information raised by the school district defendants in their replies with respect to the arguments plaintiffs now seek to address in their surreplies.  Accordingly, plaintiffs' motions for leave to file surreplies are denied.

3

## STATEMENT OF MATERIAL FACTS

The parties have submitted voluminous statements of fact consisting of more than eight hundred fact paragraphs spanning hundreds of pages in each of the three separate cases. Many of those facts appear in the parties' statements of facts in all three cases, but others do not. The court has thoroughly reviewed the parties' statements of facts, but in the interests of brevity will not repeat them all here. Instead, the court has endeavored to condense and will recite only those facts that are most material to the court's resolution of the current motions. Additionally, consistent with the well established standard for evaluating a motion for summary judgment, the court has viewed those facts in the light most favorable to plaintiffs, the nonmoving parties.

Defendant Johnny Aubrey was a volunteer weight training coach for student athletes in Liberal, Kansas. He ran a weight training program out of his home in which many youth in Liberal participated over the course of several years. The participants included, among others, plaintiffs C.T., J.B. and G.B. This lawsuit arises out of the fact that Mr. Aubrey's program with plaintiffs included, to varying degrees, having them take nude baths at Mr. Aubrey's house while Mr. Aubrey would sometimes come in and out of the room; Mr. Aubrey giving them body massages using an ultrasound machine[2] on sore muscles, including sometimes massaging their groin areas and buttocks, while they lay naked on his bed (except for keeping a towel over their genitals); and having them conduct weigh-ins at the school in

---

[2] The ultrasound machine emitted heat and vibrations to alleviate soreness.

4

the nude when it was not wrestling season.  Mr. Aubrey also engaged these teenage boys in conversations and various activities ostensibly as sex education to keep them from getting girls pregnant and keep themselves out of trouble of a sexual nature.  These "sex talks" included isolated incidents where, for example, he told G.B. to practice putting on a condom, he encouraged C.T. and G.B. on separate occasions to masturbate, and there were occasions when he had the boys watch sex videos.  The fact that these events occurred is relatively uncontroverted.  Plaintiffs claim that Mr. Aubrey's actions were inappropriate whereas defendant Aubrey denies that his actions were wrongful.[3]  Plaintiffs also claim that Mr. Aubrey operated his program in connection with the Liberal School District's athletic programs and, as such, plaintiffs assert that the school district and several individuals employed by the school district are liable for Mr. Aubrey's actions.

The only summary judgment motions currently at issue are those filed by the school district defendants.  Those defendants include the Liberal School District itself and various school coaches and administrators.  Specifically, defendant Gary Cornelsen was a long time friend of Mr. Aubrey's and was the school's head football coach from 1991 through 2001, and again in 2003.  He also was the school's athletic director from the summer 2002 through April 2004.  Defendant Tom Scott was the school's wrestling coach from 1989 through 2001.

---

[3] The court wishes to emphasize, as discussed in more detail below, that at this procedural juncture the parties have not raised the issue of the actionability of Mr. Aubrey's conduct.  Thus, the court does not at this time express any opinion about whether the plaintiffs' allegations concerning Mr. Aubrey's alleged misconduct would be sufficient to withstand a motion for judgment as a matter of law at trial on their childhood sexual abuse, battery, and breach of fiduciary duty claims against him.

Defendant Mike Pewthers was the school's assistant wrestling coach from approximately 1992-1993 until Mr. Scott left in 2001, at which time Mr. Pewthers became the head wrestling coach.  Defendant Dave Webb was the principal from 2001 to 2003.  Defendant Jim Little was an assistant principal from 1998 until 2003, and he became the principal in 2003.

The predominant theme of the current motions for summary judgment is the extent to which the school district and/or its various employees can be held liable for Mr. Aubrey's actions.  The school district defendants maintain that Mr. Aubrey was not an employee of the school and his weight training program was not a school program and, as such, it cannot be held liable for his actions.  They rely on the fact that the problems with Mr. Aubrey's program did not come to light until the spring of 2003 when G.B. reported the matter to law enforcement officials.  Plaintiffs C.T. and J.B. corroborated G.B.'s allegations against Mr. Aubrey.  Plaintiffs experienced some backlash from the other student athletes, who did not believe the allegations against Mr. Aubrey.[4]  Mr. Aubrey discontinued his program that same spring and the school district took measures to distance itself from Mr. Aubrey.  Thus, the summary judgment record does not reflect that Mr. Aubrey engaged in any of the conduct that forms the basis of this lawsuit at any time after the spring of 2003.

Plaintiffs, on the other hand, seek to impose liability against the school district defendants because Mr. Aubrey ingratiated himself and became friends with the school

---

[4] Criminal charges were ultimately brought against Mr. Aubrey, although the nature of those charges is unclear.  It appears that Mr. Aubrey was acquitted of the charges.

district's coaches and athletics director; they gave him physical access to school property, including his own key to the school; they gave him special access to athletes reserved only for the school district coaches such as allowing him to be present in the coaches' areas and permitting him to assist with practices; and, in doing so, they cloaked him in the authority of the school's athletic programs.  Plaintiffs contend that Mr. Aubrey was a resource to the sports programs at the Liberal High School who helped prepare students physically for the district's sports programs and he effectively became another supervisor of the athletes. Parents and students perceived that athletes who participated in Mr. Aubrey's program were given special consideration in high school sports.  Mr. Aubrey was so far insinuated into the school district's athletic program that at least one parent believed him to be what is known as a "Rule 10" coach who is not a certified teacher but is hired by the school to coach student athletes.

With this general background in mind, the court will proceed to analyze the parties' various specific arguments, and will discuss the facts (viewed in the light most favorable to plaintiffs) in more detail in connection with those arguments.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Rost ex*

*rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Scott v. Harris*, 17 S. Ct. 1769, 1774 (2007)). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Libertarian Party v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and

inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## DISCUSSION[5]

Before delving into the school district defendants' motions for summary judgment, the court wishes to clarify that in resolving these motions the court is not expressing any opinion about whether Mr. Aubrey's alleged actions were wrongful.  Mr. Aubrey himself, who appears pro se in this action, has not moved for summary judgment on the plaintiffs' claims against him for childhood sexual abuse, battery, and breach of fiduciary duty. Furthermore, as explained below, the only claims against the school district defendants that survive summary judgment are G.B.'s Title IX student-on-student harassment claim as well

---

[5] The school district defendants state that they object to the plaintiffs' assertion of their claim under Title IX for failing to implement adequate policies and training to protect them from harassment and also to plaintiffs' assertion of their claim pursuant to 42 U.S.C. § 1983.  Those claims were included in the pretrial orders by the magistrate judge subject to the school district defendants' objections to them on the ground that they were not previously pled.  A plaintiff's attempt to add a new claim to the pretrial order is the equivalent of asking leave to amend the complaint, and must be evaluated by the court under the standards set forth in Rule 15(a) of the Federal Rules of Civil Procedure. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  Leave to amend is to be "freely given when justice so requires," Fed. R. Civ. P. 15(a), and the most important factor in deciding whether to permit leave to amend is "whether the amendment would prejudice the nonmoving party," *Minter*, 451 F.3d at 1207.  Here, the school district defendants have not even discussed, let alone established, how they would be prejudiced by the plaintiffs' allegedly belated assertion of these claims and the court determines below that the school district defendants are entitled to summary judgment on these claims in any event.  Consequently, the court will consider these claims on their merits. *See, e.g.*, *id.* at 1207-11 (finding the district court committed reversible error by excluding a claim from the pretrial order where the defendant did not establish prejudice).

as all of the plaintiffs' state law respondeat superior and negligent supervision, retention, and hiring claims.  The school district defendants' motions for summary judgment are otherwise granted as to all other Title IX claims, plaintiffs' § 1983 claims, and plaintiffs' state law ratification claims and claims for negligent failure to supervise children.  Resolution of the issues raised in the school district defendants' motions concerning the only surviving claims – G.B.'s Title IX peer harassment claim and the respondeat superior and negligent supervision claims – does not require the court to consider the issue of whether Mr. Aubrey's alleged conduct was (or was not) wrongful.  The surviving Title IX claim is based on school personnel's response to conduct by other students.  And, as to the state law claims, the school district did not seek summary judgment on the basis that Mr. Aubrey's conduct was not actionable.  Instead, as to those claims the school district's motions were directed solely to the extent to which it could be held liable for Mr. Aubrey's conduct.  Thus, the court has not been called upon to evaluate the extent to which Mr. Aubrey's alleged conduct toward the plaintiffs is actionable under any asserted claim.  Having made this clarification, then, the court proceeds to analyze the school district defendants' motions for summary judgment.

## I.    Title IX Claim

Title IX provides in pertinent part as follows: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  In this case, plaintiffs assert four different types of Title IX violations: (A) deliberate indifference to harassment by Mr. Aubrey, (B)

10

deliberate indifference to harassment by other students, (C) retaliation for complaining about sexual harassment and abuse (J.B. & G.B. only), and (D) failing to implement adequate policies and training to protect them from harassment.

        A.      *Deliberate Indifference to Harassment by Mr. Aubrey*

Plaintiffs' claims that the school district violated Title IX by being deliberately indifferent to the harassment by Mr. Aubrey is foreclosed by the Supreme Court's holding in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998).  There, the Supreme Court held that a private plaintiff may not recover damages under Title IX "for the sexual harassment of a student by one of the district's teachers . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  *Id.* at 277.  An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the . . . [district's] behalf."  *Id.* at 290.  "Actual notice" must amount to "actual knowledge of discrimination in the recipient's programs."  *Id.*  The Tenth Circuit has indicated that this means the school district must have had actual knowledge that the teacher presented a substantial risk of abuse to students.  *Escue v. N. Okla. College*, 450 F.3d 1146, 1154 (10th Cir. 2006).  Further, "the response must amount to deliberate indifference to discrimination . . . . The premise, in other words, is an official decision by the recipient not to remedy the violation."  *Gebser*, 524 U.S. at 290.

Here, plaintiffs point out that Mr. Scott knew that Mr. Aubrey talked to the kids in his program about sex education-type topics, which Mr. Scott assumed to mean "keep your pants zipped, you know, don't get a girl pregnant, you know, ruined your life, messes everything up." But, there is nothing about this which would indicate that Mr. Scott knew that Mr. Aubrey was taking the matter any further than such general conversations. Plaintiffs also point out that Mr. Aubrey had them conduct nude weigh-ins at school. Certainly, the summary judgment record establishes that school officials were generally aware that Mr. Aubrey would take kids to the school to do weigh-ins. The court has carefully reviewed the deposition testimony cited by plaintiffs on this point, however, and finds no testimony from which a rational trier of fact could find that any school official would have known that these weigh-ins involved any inappropriate behavior. Mr. Scott's testimony indicated that those weigh-ins occurred in his office, in connection with wrestlers attempting to make weight during the wrestling season, in a setting where nude weigh-ins were not uncommon. Even though Mr. Scott was not in the office at the time, he was in the next room and the weigh-ins were brief. According to C.T., he would enter and exit Mr. Scott's office fully clothed. He would "just get nude, get on the scale and get out." This summary judgment record does not establish that any school official with authority had actual knowledge that Mr. Aubrey's behavior was inappropriate. *See, e.g.*, *Rost ex rel. K.C.*, 511 F.3d at 1119-20 (affirming district court's grant of summary judgment where the record did not show that the school district had actual notice of the specific harassment of the plaintiff).

Any implication by the plaintiff that the school district can be held liable under Title IX because it "should have known" about any misconduct by Mr. Aubrey is without merit. *See Gebser*, 524 U.S. at 282 (expressly rejecting the notion that a school district can be held liable simply because it "'should have known' about harassment but failed to uncover and eliminate it").  It is uncontroverted that G.B.'s allegations in the spring of 2003 were the first indication the school district received of more deviant behavior by Mr. Aubrey.  And, the record does not reflect that any arguably inappropriate behavior by Mr. Aubrey occurred after that time.  To the contrary, the record reflects that Mr. Aubrey ceased his weight lifting program at that point and there is no indication that he had any further inappropriate contact with any of the plaintiffs.

In sum, a rational trier of fact could not conclude based on the summary judgment record that any school district personnel had actual knowledge that Mr. Aubrey posed a substantial risk of abuse to students.  Therefore, the school district's motions for summary judgment on these claims are granted.[6]

B.   *Deliberate Indifference to Harassment by Other Students*

In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court held that public schools, as recipients of federal funds, can be liable under Title IX for student-on-student sexual harassment "but only where the funding recipient acts with

---

[6] Summary judgment on C.T.'s claim is also warranted on the basis that, as discussed below, he has not raised an issue of fact that the alleged harassment resulted in him being denied access to any educational opportunities or benefits.

deliberate indifference to known acts of harassment in its programs or activities" and "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* at 633; *see also Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1246 (10th Cir. 1999) (discussing the elements of a Title IX peer harassment claim under *Davis*). A district is deliberately indifferent to acts of student-on-student harassment "only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648; *accord Rost ex rel. K.C.*, 511 F.3d at 1121.

### 1. C.T.'s Student-on-Student Harassment Claim

The school district defendants' motion for summary judgment on plaintiff C.T.'s peer harassment claim is granted because he has not raised a genuine issue of material fact sufficient to withstand summary judgment on several aspects of this claim. The only harassment of C.T. by another student was a single occasion in which that student called C.T. a "liar" and a "fag" in front of the rest of the football team at football practice. C.T. testified that he regarded the incident as "nothing major" and he "just blew it off." No coaches were present, C.T. did not report the incident to any coaches, and no such event ever occurred again. No rational trier of fact could find that this single incident of harassment (which C.T. himself apparently did not even regard as particularly significant) was severe and pervasive or that the school was actually aware of the incident, a necessary predicate to finding deliberate indifference. Moreover, there is no evidence that this incident resulted in C.T. being denied access to any educational opportunity or benefit. He testified that the events

surrounding Mr. Aubrey did not affect his schooling and that he participated in school programs to the full extent that he wanted to do so.  He graduated from Liberal and was awarded a National Merit Scholarship.  Summary judgment on this claim, then, is warranted.

### 2.   J.B.'s Student-on-Student Harassment Claim

Summary judgment on J.B.'s peer harassment claim is granted for similar reasons. It is uncontroverted that J.B. was never subjected to harassment by other students while he was at school because of his accusations against Mr. Aubrey.  The only time he was picked on occurred outside of school–a single incident where he and another student "exchanged words."  The other student confronted J.B. and told J.B. that he had made a big mistake.  As with C.T.'s claim, no rational trier of fact could find that this single incident of harassment was severe and pervasive or that the school was actually aware of the incident.  Furthermore, J.B. has not raised a triable issue of fact about whether this harassment resulted in him being denied access to any educational opportunity or benefit.

### 3.   G.B.'s Student-on-Student Harassment Claim

Turning to G.B.'s peer harassment claim, however, the court finds that the record, when viewed in the light most favorable to G.B., contains sufficient facts for G.B. to withstand summary judgment on this claim.  After G.B.'s allegations concerning Mr. Aubrey became public in the spring of 2003, the student who exchanged words with J.B. assaulted him in the hallway at school and gave him a black eye.  Mr. Cornelsen was aware of this incident and yet did not report it to the school administration to mete out formal discipline. Two students gave G.B. a death threat.  G.B.'s father told Mr. Cornelsen about another

15

incident of harassment that occurred in weight training at school.  G.B. was called horrible names every day he went to school for the remainder of the school year in the spring of 2003.  According to G.B.'s parents, they reported each incident to school officials and yet there is no evidence that these other students were meaningfully disciplined for the harassment.[7]  The next school year G.B. transferred to Turpin, Oklahoma, where he finished out his high school years.  Although he had been a good wrestler when he was at Liberal his freshman year, he was not able to wrestle the rest of his high school years because Turpin did not have a wrestling program.  A rational trier of fact could certainly conclude that the school district's lack of response to this harassment, which occurred at school, amounted to deliberate indifference to harassment that was so severe, pervasive, and objectively offensive that it effectively barred G.B.'s access to completing his high school education in Liberal.  *See generally, e.g.*, *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952 (D. Kan. 2005) (school district that failed to remedy similar harassment, albeit spanning a longer period of time, which resulted in the plaintiff leaving school was sufficient to withstand summary judgment).[8]

---

[7] The court rejects the school district's argument that it was unaware of most of the bullying plaintiff suffered.  Because the court must view the summary judgment record in the light most favorable to G.B., the court must accept as true that school district personnel were aware of the severity and pervasiveness of the harassment and yet they failed to take prompt remedial measures reasonably calculated to end the harassment, as evidenced by the fact that the harassment was apparently so unbearable that plaintiff transferred to another school the following year.

[8] The court finds that the summary judgment record is sufficient for G.B. to withstand summary judgment on this claim based solely on the peer harassment that is alleged to have

The school district's argument that the harassment was not sufficiently sexually charged to be actionable under Title IX is without merit.  G.B. was physically assaulted because other students did not believe his accusations of sexual harassment and abuse by Mr. Aubrey.  Students called him names such as "fag boy" and said things to him like "I hear you are Johnny's little bitch" and "I hear you got butt raped by Johnny."  A rational trier of fact could certainly conclude that this harassment was sexual in nature.[9]  Accordingly, the school district's motion for summary judgment on this claim is denied.

C.     *Retaliation for Complaining About Sexual Harassment and Abuse (J.B. and G.B. Only)*

Retaliation against a person because that person has complained of sex discrimination constitutes intentional discrimination "on the basis of sex" in violation of Title IX.  *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 173-74 (2005) (holding male athletic coach could bring suit under Title IX where he alleged he had suffered adverse consequences for protesting discriminatory treatment of female athletes).  In evaluating such claims, courts

---

occurred at school.  As such, the court declines to address any of the other incidents which occurred outside of school.  Additionally, the school district's attempt to characterize Mr. Aubrey's program as a private program that was run outside of the school is without merit with respect to this aspect of G.B.'s Title IX claim because the peer harassment that occurred at school is sufficient to survive summary judgment.

[9] In the school district's memorandum in support of its motion for summary judgment, it did not cite any legal authority in support of this argument.  Rather, it simply argued–briefly–that as a factual matter this harassment was not sexually charged.  As discussed above, the court disagrees.  The court does not delve any further into the issue of the extent to which this type of harassment is actionable under Title IX because the school district did not present any legal authority on this issue.

have looked to the analogous and more developed case law governing Title VII retaliation claims. *See, e.g.*, *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206-07 (4th Cir. 1994); *see also Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 832 (10th Cir. 1993) (stating Title VII provides "the most appropriate analogue when defining Title IX's substantive standards" (quotation omitted)).   In analyzing such retaliation claims, the court applies the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). This framework requires the plaintiff to first establish a prima facie case of discrimination. *Id.*   To do this, a plaintiff must show that (1) he or she engaged in protected opposition to discrimination, (2) that a reasonable person would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.   *Id.* at 1212.   If a plaintiff is unable to make out a prima facie case, judgment as a matter of law is appropriate.   *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007).

    J.B. contends that the school district retaliated against him for testifying at Mr. Aubrey's trial by targeting him with countless acts of unwarranted discipline, uneven justice, and even a physical assault by an assistant principal.   The school district challenges this claim on the ground that the disciplinary actions taken against him were the result of his own bad behavior.   The court views this as a challenge that J.B. has not made out a prima facie case on the third element, i.e., that a causal connection existed between the protected activity (J.B.'s complaints about Mr. Aubrey's alleged misconduct) and the materially adverse action

(various disciplinary actions taken against him during high school).  A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *Williams*, 497 F.3d at 1091.  In support of this claim, J.B. categorically string cites thirteen statements of fact which establish that J.B. received disciplinary referrals his freshman year for being disruptive in class, that he was kicked out of auto mechanics his sophomore year for cussing at a teacher, that Mr. Little had a police officer confront J.B. with the accusation that J.B. smelled like marijuana and force him to undergo a sobriety test at a time when no one else could smell it on J.B., that J.B. was suspended and sent to drug evaluation and counseling after he flunked the sobriety test, that J.B. was sent to the office for disrupting class, that J.B. was criminally charged and convicted as a result of an encounter with Assistant Principal Keith Adams in December 2004, that J.B. was disciplined for using his cell phone in class, and numerous other similar incidents.  Significantly, however, despite J.B.'s categorical allegation that these actions constituted "retaliation," J.B. has made no meaningful attempt to discuss or develop the factual record in a manner which establishes that J.B.'s accusations against Mr. Aubrey caused these disciplinary actions.  He has not established the extent, if any, to which the school district personnel who meted out this discipline were even aware of his involvement in the accusations against Mr. Aubrey.  And, he has not discussed any temporal connection.  The only conclusion a rational trier of fact could draw based on the record is that the various disciplinary actions were a result of his

own misbehavior.  As J.B. has failed to establish this element of his prima facie case of retaliation, then, the school district is entitled to summary judgment on this claim.

G.B. also asserted a retaliation claim against the school district in the pretrial order in his case.  The school district moved for summary judgment on this claim and G.B. did not respond to the school district's motion on this claim.  The court is unable to evaluate this claim because its factual basis is not apparent.  As such, the court grants summary judgment on this claim on the ground that G.B. is deemed to have abandoned this claim.

> D.    *Failure to Implement Adequate Policies and Training*

The plaintiffs' final Title IX claims allege that the school district acted with deliberate indifference by establishing policies, procedures, and practices that caused or promoted an environment or program in which sexual abuse, harassment, and/or retaliation of students occurred or by acting with deliberate indifference to providing training and guidance that was obviously necessary for the implementation of school athletic programs.  This claim is based on the case of *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007).  There, the plaintiffs were sexually assaulted by football players and high school students on a recruiting visit for the university's (CU's) football program.  Part of CU's recruiting efforts involved showing recruits a "good time" by pairing them with female "Ambassadors" to show them around campus, and at least some of these recruits had been promised an opportunity have sex.  At the time of the assaults, there were a variety of sources of information suggesting the risks that sexual assault would occur if recruiting was not adequately supervised.  Some of these reports were not specific to CU.  Other information

was specific to CU, including a prior sexual assault by recruits after which a local district attorney had initiated a meeting with top CU officials, telling them CU needed to develop policies for supervising recruits and implement sexual-assault-prevention training for football players. *Id.* at 1173. "Yet CU did little to change its policies or training following that meeting." *Id.* The coaching staff was informed of sexual harassment and assault by players, and responded in ways that were more likely to encourage than eliminate such misconduct. *Id.* at 1173-74. Plaintiffs sought relief under Title IX, claiming that CU knew of the risk of sexual harassment of female CU students in connection with the CU football recruiting program and that it failed to take any action to prevent further harassment before their assaults. *Id.* at 1174. The district court granted summary judgment.

On appeal, the Tenth Circuit expressly rejected the notion that the claims should be characterized as ones for student-on-student harassment, reasoning that the assaults arose out of an official school program–the recruitment of high school athletes–in which the assaults were "the natural, perhaps inevitable, consequence of an officially sanctioned but unsupervised effort to show recruits a 'good time.'" *Id.* at 1175. The court carefully examined the Supreme Court's holdings in *Gebser* and *Davis* and the fact that Title IX liability is premised on the federal funding recipient having "actual notice" of sexual harassment such that a refusal to remedy the harassment constitutes deliberate indifference. The court distinguished the nature of the claims at issue in *Gebser* and *Davis* from the claims at issue in *Simpson*, as follows:

> **We find it significant that in those cases there was no element of encouragement of the misconduct by the school district.** To be sure, in those cases the school district could anticipate that the very operation of a school would be accompanied by sexual harassment, but that is simply because, unfortunately, some flawed humans will engage in such misconduct when they are in the company of others. Here, however, the gist of the complaint is that CU sanctioned, supported, even funded, a program (showing recruits a "good time") that, without proper control, would encourage young men to engage in opprobrious acts. We do not think that the notice standards established for sexual-harassment claims in *Gebser* and *Davis* necessarily apply in this circumstance.

*Id.* at 1177 (emphasis added). The court concluded that Title IX liability can exist "when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the [federal funding] recipient." *Id.* at 1178. The court adopted the "obvious"-need-for-training parameters as set forth in *City of Canton v. Harris*, 489 U.S. 378 (1989), that deliberate indifference claims can be established by a failure to train for certain obvious risks. *Simpson*, 500 F.3d at 1178-79.

Under this standard, the Tenth Circuit reversed the district court's grant of summary judgment on the plaintiffs' claims at issue in *Simpson*. The court discussed the importance of CU's recruiting program to the football program's success, explaining that player-hosts "were chosen because they knew how to 'party' and how 'to show recruits a good time,' and would 'do a good job of entertaining [them].'" *Id.* at 1180. At least some of the recruits understood that they were going over to the apartment of some female CU students to have sex. *Id.* The plaintiffs became intoxicated and were sexually assaulted by recruits and players. The Tenth Circuit stated that "[t]he central question in this case is whether the risk

of such an assault during recruiting visits was obvious.  In our view, the evidence could support such a finding." *Id.* at 1180-81.  The court pointed to the fact that sexual misconduct associated with college football programs had been a matter of widespread reporting and concern for many years, that CU itself was "a specific focus of concern" based on prior assaults, and that athletic department personnel knew that sincere efforts were not being made to establish a football team culture that would prevent sexual assaults. *Id.* at 1181-84. The court explained that the evidence before the district court would support a finding that the football coach had general knowledge of the serious risk of sexual harassment and assault during college football recruiting efforts, that he knew such assaults had indeed occurred during CU recruiting visits, that he nevertheless maintained an unsupervised program to show high school recruits "a good time," and that he knew that there had been no change in atmosphere since a prior assault that would make such misconduct less likely. *Id.* at 1184. Thus, the Tenth Circuit reasoned, citing *Canton*, that a jury could infer that the need for training of player-hosts was so obvious, and the inadequacy so likely to result in Title IX violations, that the coach could reasonably be said to have been deliberately indifferent to the need for training. *Id.* at 1184-85.

In this case, plaintiffs seek to withstand summary judgment on their claims under the theory that the school district failed to train its employees to handle recurring situations presenting an obvious potential for civil rights violations, where the risk of sexual harassment and abuse was obvious, and there were signs that the school's policies were inadequate.  In support of this theory, they point to literature showing that school districts have been aware

of the risks of sexual misconduct by teachers and "trusted others" (i.e., Mr. Aubrey) for decades; that the school district had specific knowledge about prior instances of sexual harassment in the school district by a choir teacher, an athletic team physician, and a coach and teacher (defendant Cornelsen's son), and various other incidents; that the school district had nonetheless failed to implement meaningful sexual harassment policies and adequately train its personnel; that the need for close supervision of "trusted others" was obvious; and that signs existed that training was inadequate because school administrators were generally unaware of the school district's sexual harassment policies. Even accepting these allegations as true and viewing the summary judgment record in the light most favorable to plaintiffs, however, the facts of this case do not fall within the framework of the Tenth Circuit's holding in *Simpson*.

The deliberate-indifference-to-obvious-need-for-training standard adopted by the Tenth Circuit in *Simpson* for Title IX claims is confined to circumstances where a federal funding recipient sanctions a specific program that, without proper control, would encourage sexual harassment and abuse such that the need for training or guidance is obvious. In that situation, the failure amounts to an official policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of the program. Here, the specific program at issue was a weight training program run by a school volunteer. Unlike CU's program of showing football recruits a "good time" that was at issue in *Simpson*, a mere weight training program does not bear the element of encouragement of misconduct by the school district. A rational trier of fact could not find based on the

summary judgment record that the very operation of a weight training program created a risk of abuse that would have been obvious to school officials.  Rather, this is one of those cases like *Gebser* and *Davis* where, although the school might have anticipated that various aspects of its operations would be accompanied by unfortunate incidents of sexual harassment by flawed humans, the school district cannot be liable in the absence of actual notice of a substantial risk of sexual abuse.  Under these far more typical circumstances, the failure to implement sexual harassment policies and procedures is insufficient to establish liability under Title IX because this failure does not imply the school district's actual notice of any sexual harassment or its deliberate indifference thereto.  *See Gebser*, 524 U.S. at 291-92 (school district's failure to promulgate and publish an effective grievance procedure for sexual harassment claims did not establish the requisite actual notice and deliberate indifference).  Accordingly, the school district's motions for summary judgment on these claims are granted.

## II.     Section 1983 Claims

Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 against the school district and the individual school district defendants.  In these claims, they allege that they were deprived of their constitutional rights to substantive due process and equal protection when they were sexually abused and/or harassed by Mr. Aubrey, who was acting under color of law, and that the school district defendants' custom, policy, or widespread practice was a moving force behind those constitutional violations.  The school district defendants now seek summary judgment on those claims on a variety of grounds, only one of which the court will address

because plaintiffs have not raised a genuine issue of material fact to withstand summary judgment on the issue.

The school district defendants seek summary judgment on the basis that Mr. Aubrey was not a state actor.  In support of this argument, they cite *Polk County v. Dodson*, 454 U.S. 312 (1981), *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995), and *D.T. v. M.T. Independent School District No. 16*, 894 F.2d 1176 (10th Cir. 1990), all of which involved the "under color of law" requirement in § 1983 claims.  It is well established that to recover under § 1983, a plaintiff must show the deprivation of a constitutional right "under color of state law," which is a test that is identical to the state-action requirement.  *Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007).  Four different tests exist to determine whether challenged conduct constitutes action "under color of law" by private parties, such as Mr. Aubrey.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453-56 (10th Cir. 1995) (discussing the nexus test, the symbiotic relationship test, the joint activity test, and the public function test).  Private conduct that is not "fairly attributable" to the state under these tests is not actionable under § 1983, "no matter how atrocious" it is.  *Darr*, 495 F.3d at 1256.

Plaintiffs notably have not responded to the school district defendants' motions on the issue of whether Mr. Aubrey's conduct can be regarded as state action.  Specifically, they have not discussed any of the tests under which the court would evaluate whether his alleged sexual harassment and abuse constitutes state action.  Instead, plaintiffs explain that their § 1983 claim is based on the nude weigh-ins at school and they devote much attention to the

school district's policies, customs, and inadequate training concerning sexual harassment and abuse. But, this argument misses the critical threshold inquiry that a § 1983 claim must be based, first and foremost, on a constitutional violation by a person acting under color of state law. Plaintiffs' arguments concerning the school district's policies, customs, and inadequate training are directed to the next step in the analysis, which is establishing the municipal liability of the school district on the basis that its policies or customs were the moving force behind the constitutional deprivation, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), or because its inadequate training amounted to deliberate indifference, *see City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). "The obvious purpose of Congress in the enactment of § 1983 was to provide a remedy to parties deprived of constitutional rights by a state official's abuse of his position while acting under color of state law." *D.T.*, 894 F.2d at 1187. Having failed to address the issue of whether Mr. Aubrey's actions involved an abuse of his position while acting under color of state law, then, plaintiffs have not raised a triable issue of fact as to whether the nude weigh-ins conducted by Mr. Aubrey constitute state action. *See, e.g.*, *Jojola*, 55 F.3d at 492-94 (affirming district court's dismissal of § 1983 claim against school officials based on sexual molestation of plaintiff by school's custodian where allegations did not show custodian acted under color of state law); *D.T.*, 894 F.2d at 1186-92 (reversing jury verdict against school district in favor of students who were sexually molested by teacher because there was no state action involved in the events, which occurred during summer vacation).

Instead of directly responding to the school district defendants' argument that Mr. Aubrey was not a state actor, plaintiffs apparently seek to avoid this issue by contending that even where a perpetrator is not a state actor an action can be maintained where the perpetrator's supervisor or employer participated in or consciously acquiesced in the harassment, citing *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994). Plaintiffs did not, however, preserve this theory in their pretrial orders. Instead, they acknowledged that they would have to prove that Mr. Aubrey was acting under color of law in order to succeed on their § 1983 claims. *See* Pretrial Order (doc. 261 in Case No. 06-2093) ¶ 6(h), at 24; Pretrial Order (doc. 9 in Case No. 06-2359) ¶ 6(I), at 25; Pretrial Order (doc. 19 in Case No. 06-2360) ¶ 6(I), at 25. Thus, the court deems plaintiffs to have waived any such supervisory liability theory, especially in light of the rather unwieldy nature of these claims. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims not included in the pretrial order are waived); *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991) (issues not preserved in the pretrial order have been eliminated from the action).[10] Accordingly, summary judgment is granted in favor of the school district on plaintiffs' § 1983 claims.

_____

[10] Pursuit of a supervisory liability theory would be further complicated by the fact that plaintiffs have asserted this claim against the individual defendants only in their official capacities, not in their individual capacities. These official capacity claims are not viable because officials acting in their official capacities are not "persons" subject to liability for money damages under § 1983. *Sutton v. Utah State School for Deaf & Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999). In the absence of any viable claims against the individual school district defendants, then, there would not be any "supervisor" upon which to impose liability against the school district.

III.    **State Law Claims**

Plaintiffs' state law claims against the school district defendants seek to impose liability against them for Mr. Aubrey's conduct either directly through the doctrines of respondeat superior and ratification, or indirectly by alleging that they had a duty to supervise Mr. Aubrey to prevent the misconduct.  These include claims against the school district for (1) respondeat superior for childhood sexual abuse by Mr. Aubrey, (2) ratification of childhood sexual abuse/battery by Mr. Aubrey, and (3) negligent supervision, retention, and hiring of Mr. Aubrey, as well as another claim against all of the school district defendants for negligent failure to supervise children.  The school district defendants argue that summary judgment is warranted on these claims for several reasons.

A.    *Exercise of Supplemental Jurisdiction*

The school district defendants contend that, to the extent that summary judgment is granted on plaintiffs' federal claims, the court should decline to exercise supplemental jurisdiction over their state law claims.  They point out that plaintiffs have never invoked the court's diversity jurisdiction.  These consolidated cases involve three separate cases, and the court is granting summary judgment on the federal law (Title IX and § 1983) claims of plaintiffs C.T. and J.B.  Certainly, then, it would be within the court's discretion to decline to exercise supplemental jurisdiction over the remaining state law claims in their cases.  *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction"); *Summum v. Duchesne City*, 482 F.3d 1263, 1276 (10th Cir. 2007) (district

court's decision regarding supplemental jurisdiction is reviewed for abuse of discretion, and noting that generally when federal claims are disposed of prior to trial the court may decline to exercise supplemental jurisdiction over state law claims).  In deciding how to exercise that discretion, the court considers and weighs the values of judicial economy, convenience, fairness, and comity.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997); *Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Comm'rs*, 365 F.3d 855 (10th Cir. 2004).

In this case, these values would not be served by dismissing C.T. and J.B.'s remaining state law claims.  All of the plaintiffs' claims in these consolidated cases center around the same nucleus of operative facts—namely, the alleged sexual harassment and abuse by Mr. Aubrey in his weight training program with student athletes in Liberal, the extent to which the school district can be held liable for Mr. Aubrey's actions, and the school district's response once it learned about the plaintiffs' accusations against Mr. Aubrey.  It would be grossly inefficient and inconvenient to re-start C.T. and J.B.'s cases in state court at this late date and force the parties and the witnesses to participate in multiple trials on these claims. The court finds nothing unfair about retaining the state law claims here.  Although dismissal might result in the school district defendants losing the tactical advantage that C.T. and J.B. might not re-file their state law claims against them in state court, the court does not believe that those types of litigation strategies implicate the type of "fairness" concerns the court is to weigh in determining whether to exercise supplemental jurisdiction.  Finally, the fact that

30

one case would remain here (G.B.'s) could create comity issues.  The court therefore rejects the school district defendants' suggestion that the court should dismiss the state law claims, and the court hereby exercises its discretion to continue to exercise supplemental jurisdiction over those claims.

        B.      *Liability Under the KTCA*

      The school district contends that the fact that Mr. Aubrey was not an "employee" of the school district defeats its liability for his conduct.  Its argument in this respect is that the school district, as a municipality, can be held liable in tort only for the acts of its "employees while acting within the scope of their employment."  The Kansas Tort Claims Act (KTCA) provides that a governmental entity is generally "liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."  K.S.A. § 75-6103(a).  The KTCA broadly defines the term "employee," however, to include "persons acting on behalf or in service of a governmental entity in any official capacity, **whether with or without compensation**."  *Id.* § 75-6102(d) (emphasis added).  This definition tracks the common law understanding of an agent, which can include unpaid volunteers.  *See generally* Restatement (Second) of Agency § 225 (1958) ("One who volunteers services without an agreement for or expectation of reward may be a servant of the one accepting such services.").  Thus, the mere fact that Mr. Aubrey was not a formal "employee" of the school district does not entitle the school district to summary judgment.

C.      _Respondeat Superior Liability_

The school district also contends that it cannot be held liable for the complained-of conduct by Mr. Aubrey because his actions did not occur in the scope of his "employment." Under Kansas law, an employer is liable for injuries caused by an employee acting within the scope of his or her employment. _O'Shea v Welch_, 350 F.3d 1101, 1103 (10th Cir. 2003). An employee is acting within the scope of his or her employment when the employee is performing services for which he or she has been employed, or when the employee is doing anything which is reasonably incidental to that employment. _Id._ "The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it." _Commerce Bank of St. Joseph v. State_, 251 Kan. 207, 210, 822 P.2d 996 (1992); _accord O'Shea_, 351 F.3d at 1103.

The jury ultimately may agree with the school district that Mr. Aubrey was not acting as its agent at all and/or that the scope of his "employment" as a volunteer was so narrow that the school district cannot be held liable for his conduct.  But, at the summary judgment stage, the court must view the record in the light most favorable to plaintiffs and, viewed as such, a rational trier of fact could conclude that at least some of Mr. Aubrey's alleged misconduct was reasonably incidental to his volunteer work as a trainer of student athletes for the school's athletic department.  Although the school district adamantly attempts to characterize his program as a private one that was run by him for which the school was not responsible, the court agrees with plaintiffs that one permissible view of the record is that he so

thoroughly ingratiated himself to the school district's coaches and athletic director that they came to rely on him to train their athletes, to facilitate his program they gave him unsupervised access to school property typically reserved only to coaches and athletes, and they permitted him to assist with and participate in the school's athletic programs in ways that the rest of the public at large, including the athletes' parents, were not permitted to participate. Student athletes generally believed that they were given special consideration in high school sports if they participated in Mr. Aubrey's program. He was so cloaked with the school's authority that at least one parent even believed he was a Rule 10 coach. Through Mr. Aubrey's program and his involvement with the school district's athletic programs, he insinuated himself into the lives of the student athletes in such a manner that he was effectively an adjunct to the school's athletic programs. Additionally, at least one of the school district's employees was aware that Mr. Aubrey was talking to those student athletes about sex education. This record presents genuine issues of disputed fact concerning the scope of Mr. Aubrey's so-called "employment" with the school district and the extent to which his complained-of conduct was reasonably incidental to that employment. As such, the school district defendants' motion for summary judgment on this issue must be denied. *See, e.g.*, *O'Shea*, 350 F.3d at 1106-07 ("Whether an employee is acting within the scope of his [or her] employment is generally a jury question.").

## D.    *Ratification Claim*

The school district defendants seek summary judgment on plaintiffs' ratification claims because once the school district heard about the allegations against Mr. Aubrey,

"[t]here is simply no evidence that the school in any way ratified anything Aubrey had done."

Ratification is the adoption or confirmation by a principal of an act performed on his behalf

by an agent which act was performed without authority. *Schraft v. Leis*, 236 Kan. 28, 37, 686

P.2d 865, 874 (1984). The doctrine of ratification is based upon the assumption that there

has been no prior authority, and ratification by the principal of the agent's unauthorized act

is equivalent to an original grant of authority. *Town Center Shopping Ctr., LLC v. Premier*

*Mortgage Funding, Inc.*, 37 Kan. App. 2d 1, 10, 148 P.3d 565, 571 (2006). Once the

principal discovers the agent's unauthorized act, the principal must promptly repudiate the

act or the court will presume the principal ratified the act. *Id.* "The key to ratification is

knowledge of the unauthorized act; without a showing of the principal's knowledge, the

principal cannot be deemed to have ratified the act." *Id.*

As the school district met its initial summary judgment burden of pointing to the

absence of a triable issue of fact to support this theory of liability, the burden shifted to

plaintiffs to withstand summary judgment on this issue. Importantly, however, plaintiffs

have not presented any meaningfully developed argument addressing why their ratification

claims, in particular, should survive summary judgment. As explained above with respect

to plaintiffs' Title IX claims based on Mr. Aubrey's alleged sexual harassment and abuse,

the record does not contain any facts from which it could be inferred that the school district

defendants were aware of anything inappropriate occurring in Mr. Aubrey's programs until

the spring of 2003. As the allegations eventually came to be understood by the school, its

personnel took actions to distance themselves from Mr. Aubrey as well as to disassociate Mr.

Aubrey and his weight lifting program from the school.  And, Mr. Aubrey himself ceased his weight lifting program around that time.  Plaintiffs have not directed the court's attention to any particular evidence in the summary judgment record from which a rational trier of fact could find that, once any of the school district defendants knew about Mr. Aubrey's allegedly inappropriate activities, they took any actions that could plausibly be viewed as having condoned or accepted his behavior.  Accordingly, the school district defendants' motions for summary judgment on plaintiffs' ratification claims are granted.

E.     *Claim for Negligent Supervision, Retention & Hiring of Mr. Aubrey*

The school district seeks summary judgment on plaintiffs' claims that the school district negligently supervised, retained, and hired Mr. Aubrey for essentially the same reasons as discussed above with respect to plaintiffs' respondeat superior claims.  In short, the school district contends that Mr. Aubrey was not hired or retained by the school district. Although this certainly might be one view of the evidence if the record were viewed favorably to the school district, at this procedural juncture the court must of course view the record in the light most favorable to plaintiffs.  As discussed above, the extent to which Mr. Aubrey was an agent of the school district is a disputed issue.  Consequently, the court cannot say as a matter of law that Mr. Aubrey was not "retained" or "hired" by the school district as a volunteer.  Although the record does not identify any particular point in time when he might have come to be regarded as an agent of the school district, the question of whether and when he became so far ingrained in the school's athletic programs as to have

35

become its agent is a disputed issue.  Consequently, the school district defendants' motions for summary judgment on these claims are denied.

     F.       <u>Claim for Negligent Failure to Supervise Children</u>

The school district defendants seek summary judgment on plaintiffs' claims for negligent failure to supervise children on a number of grounds.  One of these arguments is that the school district cannot be held liable for failing to supervise children when the only harm to other students is emotional, as damages for emotional harm is the only form of damages sought by the plaintiffs in these consolidated cases.  The court agrees.  This court carefully and thoroughly considered this issue in a prior case and found no authority to support such a claim under Kansas law.  *See Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 969-70 (D. Kan. 2005).  In fact, plaintiffs have not even responded to this argument by the defendants.  The court therefore reiterates its ruling from *Theno*, which the court continues to believe is an accurate prediction of how Kansas courts would decide this issue.  The school district defendants' motions for summary judgment on plaintiffs' claims for negligent failure to supervise children are therefore granted.

## MOTION TO CONSOLIDATE CASES FOR TRIAL

The court previously consolidated these cases for pretrial purposes.  Plaintiffs have now filed a motion to consolidate the cases for trial pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.  This rule allows a court to consolidate "any or all the matters in issue in the actions" if the actions "involve a common question of law or fact."  Fed. R. Civ.

P. 42(a).  The decision whether to consolidate such actions is left to the sound discretion of the trial court.  *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978).  In exercising its discretion, the court should take into consideration whether judicial efficiency is best served by consolidation.  *See Johnson v. Unified Gov't of Wyandotte Co.*, Case No. 99-2407-JWL, 1999 WL 1096038, at *1 (D. Kan. Nov. 16, 1999).  The court generally weighs the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense that consolidation would cause.  9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2383, at 35-36 (3d ed. 2008).

In this case, considerations of judicial efficiency weigh overwhelmingly in favor of consolidating the three cases for trial.  The school district defendants originally opposed the motion to consolidate largely on the basis that it would have been premature to consolidate the cases in light of the fact that it was unclear what issues of fact and law remained to be resolved at trial.  The motion and the school district's response were filed more than four months ago in January of 2008, before the final pretrial conference in this case and before the parties submitted their summary judgment briefs.  The court delayed resolution of the motion to consolidate because it needed to know which of the plaintiffs' claims survived summary judgment and, correspondingly, the extent to which it appeared that those surviving claims would involve common questions of law and/or fact.  Now that the court has resolved the school district defendant's motions for summary judgment, it is abundantly clear to the court that most of the evidence in the three cases will be identical and all three cases will involve many common issues of law.  It would be an undue burden on witnesses to present

37

the same testimony in three separate trials, it would be an unnecessary expense on the parties to endure three separate trials, and it would be a grossly inefficient use of the court's time and jury resources.  The school district defendants also express some concerns about juror confusion and prejudice that may result from consolidation.  While the court appreciates these concerns to a certain degree, the court does not believe that consolidation would deprive the school district defendants of a fair trial.  Their concerns about juror confusion and possible prejudice can be cured easily with appropriate jury instructions at trial.  In any event, any slight risk of juror confusion and prejudice is significantly outweighed by considerations of judicial efficiency, which clearly will be best served by consolidation.

**IT IS THEREFORE ORDERED BY THE COURT** that the school district defendants' Motions for Summary Judgment (doc. 262 in Case No. 06-2093, doc. 10 in Case No. 06-2359, and doc. 20 in Case No. 06-2360) are granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Consolidate Cases for Trial (doc. 230 in Case No. 06-2093) is granted.  The parties and the clerk are directed to docket all further pleadings in the lead case, Case No. 06-2093.

**IT IS FURTHER ORDERED** that plaintiffs' Motions for Leave to File Surreplies (doc. 286 in Case No. 06-2093, doc. 22 in Case No. 06-2359, and doc. 32 in Case No. 06-2360) are denied.

**IT IS SO ORDERED** this 10th day of June, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge